UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DENNIS FRANCIS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-4065** |
| **MARLIN GUSMAN, CRIMINAL SHERIFF OF ORLEANS PARISH, ET AL.** | **SECTION "S" (1)** |

**REPORT AND RECOMMENDATION**

Plaintiff, Dennis Francis, filed this *pro se* and *in forma pauperis* civil action pursuant to 42 U.S.C. § 1983 against Orleans Parish Criminal Sheriff Marlin Gusman, Orleans Parish Prison Medical Director Dr. James Inglese, and an unidentified attorney from the prison legal assistance department. In the complaint, plaintiff claims that he was denied adequate access to medical care and to a law library and legal services while incarcerated within the Orleans Parish Prison system. As relief, he requests both monetary damages and injunctive relief.[1]

A Spears hearing was held on February 8, 2006, to allow plaintiff a meaningful opportunity to advise the Court of the nature and factual basis of his claims. See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).[2] At that hearing, plaintiff was sworn and his testimony was recorded. Based

---

[1] Plaintiff is now incarcerated at the Elayn Hunt Correctional Center in St. Gabriel, Louisiana. Accordingly, his request for injunctive relief is moot. See Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001).

[2] "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003,

on his complaint and Spears hearing testimony, the Court finds that plaintiff is making the following allegations in support of his claims.

Plaintiff was incarcerated within the Orleans Parish Prison system in March 2001, where he remained until evacuated due to Hurricane Katrina in 2005. In 2002, he began experiencing a "dullness" in the vision of his left eye.[3] He was taken to Charity Hospital several times regarding that problem; however, the "dullness" continued to increase. The Charity Hospital physicians eventually diagnosed plaintiff as having a cataract. Plaintiff claims that he should have been given glasses and scheduled for surgery to have the cataract removed. Plaintiff estimates that, with his current vision, he would need approximately 3.00 strength reading glasses to be able to read comfortably.

Plaintiff also claims that the Orleans Parish Prison legal services and law library procedures, which allow inmates to request and borrow law books from a central library, were inadequate. He believes that if he had been given better access to legal assistance and research materials, he would have prevailed on his post-conviction applications challenging his habitual-offender proceedings and sentencing.

Sheriff Gusman has filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56.[4] Plaintiff was ordered to file a memorandum in opposition to that motion on or before April 19,

---

1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed.R.Civ.P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). Spears hearing testimony becomes a part of the total filing by the *pro se* applicant. Id.

[3] Plaintiff testified that he lost his right eye in 1998.

[4] Rec. Doc. 15.

2

2006.[5]  Plaintiff was also advised that because all of his claims were premised on the same basic facts, all defendants would be entitled to judgment as a matter of law if the Court were to find that the motion had merit.  Accordingly, the Court placed plaintiff on notice that it was considering recommending the entry of summary judgment *sua sponte* on all claims in favor of all defendants on the grounds set forth in the motion.[6]  If plaintiff opposed entry of summary judgment in favor of all defendants, he was ordered to so indicate in the memorandum.  Plaintiff has filed no memorandum in opposition to the entry of summary judgment.

The principal purpose of Fed.R.Civ.P. 56 is to isolate and dispose of factually unsupported claims.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  In reviewing a motion for summary judgment, the Court may grant judgment when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  "Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact."  Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted).  The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56); see also Provident

---

[5] Rec. Doc. 17.

[6] "Federal District Courts are empowered to enter summary judgment *sua sponte* so long as the losing party has ten days notice to come forward with all of its evidence in opposition to the motion." Harken Exploration Co. v. Sphere Drake Insurance PLC, 261 F.3d 466, 477 (5th Cir. 2001) (internal quotation marks and citations omitted).

Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001).  There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Summary judgment will be granted against "a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. Id. at 322-23.

The Court has no duty to search the record for evidence to support a party's opposition to summary judgment.  Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998).  "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Id.  Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).  "[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075-76 (5th Cir. 1994) (emphasis deleted) (internal quotation marks omitted).

## Medical Claim

It is clearly established that the constitutional rights of an incarcerated person, whether he is a pretrial detainee or a convicted prisoner, may be violated if his serious medical needs are met with deliberate indifference on the part of penal authorities.  See Thompson v. Upshur County,

Texas, 245 F.3d 447, 457 (5th Cir. 2001) (pretrial detainee); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999) (convicted prisoner). However, the United States Fifth Circuit Court of Appeals has held:

> Deliberate indifference is an extremely high standard to meet. ... [T]he plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks and citations omitted). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." Thompson, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

Gusman attached to his motion for summary judgment certified copies of plaintiff's medical records which show that he received continued medical care while incarcerated within the Orleans Parish Prison system for a vast array of ailments.[7] With respect to his vision problems specifically, the records reflect that he was seen in the jail medical department for those problems no fewer than seven times, and he was additionally sent to the Charity Hospital Ophthalmology Clinic no fewer than seven other times. The records do not reflect that any physician at either the jail or at Charity Hospital ever recommended eye surgery. Moreover, the records reflect that plaintiff was provided with reading glasses on more than one occasion and was provided with prescriptions that he could

---

[7] Rec. Doc. 15, Exhibit A. The medical records also separately appear at Rec. Doc. 14.

send to his family for other glasses.[8]  Based on those uncontroverted medical records, it is clear that plaintiff's medical needs were not met with deliberate indifference.  See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.").

It is obvious that plaintiff was frustrated by what he perceived to be a lack of quality vision care at the Orleans Parish Prison.  However, a disagreement between an inmate and the medical staff concerning whether certain medical treatment was appropriate generally is not actionable absent exceptional circumstances.  Id.  Additionally, to the extent that plaintiff is simply arguing that he was not given the best medical care available, that is not the constitutional standard.  See Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992) (the fact that medical treatment "may not have been the best money could buy" was insufficient to establish a constitutional violation); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978) (the applicable legal standard is not whether an inmate was provided the "optimum" or "best" medical care available).  Rather, as noted, the applicable test is whether prison officials were *deliberately indifferent* to plaintiff's serious medical needs.  Deliberate indifference simply cannot be inferred from the facts alleged or the medical records in evidence.

Access to Courts

It is clear that prisoners have a constitutional right of meaningful access to the courts, including access to adequate law libraries or assistance from legally trained personnel needed to file nonfrivolous legal claims challenging their convictions or conditions of confinement.  Bounds v. Smith, 430 U.S. 817, 828 (1977); Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999).  However, the Supreme Court in Bounds "did not create an abstract, freestanding right to a law library or legal

---

[8]   The jail apparently does not normally provide prescription glasses.

assistance" in the prison. See Lewis v. Casey, 518 U.S. 343, 351 (1996). "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Id.

The adequacy of the Orleans Parish Prison system's legal program, including the use of the law book loan system, was fully litigated in Howard v. Foti, No. 82-460 c/w 84-499, and monitored by this Court for many years. In that case, the Court fashioned an order to ensure that the prison law library and legal services program were constitutionally adequate. Howard v. Foti, No. 82-460 c/w 84-499, 1989 WL 152715, at *1 (E.D. La. Dec. 14, 1989).

Defendant correctly argues that it was determined that the Orleans Parish Prison system's law library and legal services program would be constitutionally adequate if the specifications set forth in the court's order were met. Defendant therefore argues that this Court need not relitigate the very issue decided in Howard v. Foti. This Court agrees. Plaintiff has not alleged that either the facts or the law have changed since Howard v. Foti was decided. In light of those facts, as well as the fact that plaintiff has filed no opposition to the motion for summary judgment, this Court looks to that precedent[9] and finds that plaintiff's claim has no merit.[10]

---

[9] "Stare decisis is the doctrine that demands adherence to judicial precedents." Meadows v. Chevron, U.S.A. Inc., 782 F. Supp. 1189, 1192 (E.D. Tex. 1991), aff'd in part, 990 F.2d 626 (5th Cir. 1993). The doctrine requires that like facts be given like treatment in a court of law. See Taylor v. Charter Medical Corp., 162 F.3d 827, 832 (5th Cir. 1998). Stare decisis is not narrowly confined to parties and their privies; rather, when its application is appropriate, the doctrine is broad in impact, reaching strangers to earlier litigation. Equal Employment Opportunity Commission v. Trabucco, 791 F.2d 1, 2 (1st Cir. 1986).

[10] Moreover, the Court notes that an inmate has a viable access-to-courts claim *only* if he can "demonstrate that his position as a litigant was prejudiced by his denial of access to the courts." McDonald v. Steward, 132 F.3d 225, 230-31 (5th Cir. 1998). Plaintiff has presented nothing other than his own conclusory, self-serving allegations that he would have prevailed in his post-conviction efforts if he had been afforded access to better legal materials and services.

In light of the foregoing, as well as plaintiff's failure to oppose the entry of summary judgment, the undersigned concludes that the defendants are in fact entitled to judgment as a matter of law.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the motion for summary judgment be **GRANTED** and that plaintiff's claims against all defendants be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this first day of June, 2006.

                                                 **SALLY SHUSHAN**
                                                **UNITED STATES MAGISTRATE JUDGE**